IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| TIMOTHY WURTH and SUSAN WURTH, | ) | CASE ID: 1040-936 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| RANDALL GIBB and JILL GIBB, | ) | |
| | ) | |
| Defendants. | ) | |

FILED
IN DISTRICT COURT
DOUGLAS COUNTY NEBRASKA
AUG 11 2004
RUDY J. TESAR
CLERK DISTRICT COURT

Assigned to Judge Randall

COME NOW the Plaintiffs, Timothy Wurth and Susan Wurth, and for their cause of action against the Defendants, Randall Gibb and Jill Gibb, state and allege as follows:

**GENERAL ALLEGATIONS**

1. At all times material hereto, Plaintiffs were residents of Omaha, Douglas County, Nebraska.

2. At all times material hereto, Defendants were residents of Omaha, Douglas County, Nebraska. Defendant Randall Gibb is a member of the United States Armed Forces, serving in the United States Air Force. Upon information and belief, Defendants currently reside in Phoenix, Arizona.

3. All events which constitute Plaintiffs' cause of action against the Defendants took place in Omaha, Douglas County, Nebraska.

4. The real property which is the subject matter of this Complaint is located at 10301 Brookside Lane, Omaha, Douglas County, Nebraska 68124.

5. In May of 2000, Plaintiffs owned a parcel of residential property at 10301 Brookside Lane in Omaha, Douglas County, Nebraska. (The "Property"). Plaintiffs owned the Property in joint tenancy.

ISSUED

6. Plaintiffs listed the Property for sale with RE/MAX, an Omaha, Nebraska, real estate company. ("RE/MAX"). Maury Kathol, a licensed real estate agent in the State of Nebraska, worked for RE/MAX and had the listing for the Plaintiffs.

7. On May 8, 2000, Plaintiffs and Defendants entered into a Uniform Purchase Agreement under which Plaintiffs agreed to sell, and Defendants agreed to buy, the Property. They agreed upon a purchase price of $225,500.00. A copy of the Uniform Purchase Agreement signed by Plaintiffs and Defendants is marked Exhibit "A", attached hereto and incorporated herein by reference.

8. Pursuant to Paragraph 10 of the Purchase Agreement, Defendants' obligation to purchase the Property was contingent upon an acceptable whole house inspection, an acceptable Service One evaluation plan, and contingent upon the Purchaser reviewing the Seller's Property Disclosure Statement. Paragraph 9 of the Purchase Agreement stated the purchase price of $225,500.00, less an earnest money deposit of $2,500.00, was conditional upon Defendants obtaining financing in the amount of $223,000.00 at an interest rate not exceeding 8.625%, amortized over 30 years, with a monthly principal and interest payment of not more than $1,622.08.

9. On or about June 14, 2000, Defendants presented to Plaintiffs a form from Navy Federal Credit Union notifying the Defendants that Navy Federal Credit Union approved the Defendants' application for mortgage to purchase Plaintiffs' home, the loan approval was contingent upon Defendants obtaining a 12-month lease on a parcel of property they owned in Colorado. Without the 12-month lease on their Colorado property, the Defendants would be

disqualified from the Navy Federal Credit Union loan. (See Navy Federal Credit Union loan document marked Exhibit "B" and incorporated herein by reference).

10. At approximately that same time in June of 2000, Plaintiffs received another offer from another prospective purchaser of the Property. The offer to purchase the Property was identical in all respects to that given by the Defendants. Already having one full price offer in hand with financing approved, Plaintiffs elected to accept Defendants' offer to purchase Plaintiffs' home.

11. Thereafter, on or about June 14, 2000, Defendants notified Plaintiffs that Defendant Randall Gibb received reassignment orders which required him to transfer from Omaha to Colorado. Because Defendants were transferred to Colorado, they would need the Colorado property they previously leased. Because the Colorado property was no longer leased, Navy Federal Credit Union withdrew its loan commitment to Defendants because of insufficient income for the amount of credit requested. On or about June 14, 2000, Navy Federal Credit Union issued a Statement of Credit Denial to Defendants. (See Navy Federal Credit Union Statement of Credit Denial, marked Exhibit "C" and incorporated herein by reference). On that date, Defendants notified Plaintiffs that Defendants would not honor the Purchase Agreement.

12. Upon learning of Defendants' stated inability to purchase the Property, Plaintiffs attempted to mitigate their damages by immediately re-listing the Property for sale. Also, Plaintiffs had already undertaken construction of a new home, which construction contract could not be cancelled at that point.

13. The Property remained on the market from June 14, 2000 through August 23, 2002, despite Plaintiffs' best efforts to sell the Property.

14. On or about August 23, 2002, Plaintiffs sold the Property for the total sale price of $195,000.00. Plaintiffs experienced a net difference in sales price between the sale to the Defendants and the subsequent sale in August of 2002, of $14,715.00.

15. Between June of 2000 and August of 2002, Plaintiffs incurred additional property taxes on the Property, and had to make interest payments on the mortgage covering the Property. Plaintiffs also incurred insurance costs insuring the Property while it remained on the market.

### FIRST CAUSE OF ACTION
### Breach of Contract

16. Plaintiffs re-allege paragraphs 1 through 15 as if fully set forth herein.

17. The Purchase Agreement dated May 8, 2000, between Plaintiffs and Defendants constituted a valid and binding contract between Plaintiffs and Defendants for Defendants to purchase the Property from the Plaintiffs.

18. Plaintiffs complied with all conditions and terms of the contract, and were ready, willing, and able to comply with the final sale of the Property to the Defendants.

19. The actions of the Defendants on or about June 14, 2000, in terminating the lease agreement they had on their Colorado property which, in turn, disqualified them from obtaining financing to purchase the Property in Omaha, constituted a willful action on the part of the Defendants to breach the contract to purchase Plaintiffs' Property.

20. As a result of Defendants' breach of contract with the Plaintiffs, Plaintiffs have been damaged in the following:

    a. The original sale price of the house pursuant to the contract with the Defendants was $225,500.00. Less a 7% commission to the real estate agent, Plaintiffs would have received net proceeds from

4

the sale in the amount of $209,715.00. When Plaintiffs resold their house in August of 2002, they received $195,000.00 net on the sale. Plaintiffs are damaged in the amount of $14,715.00 between the price they would have received from the Defendants and the price they subsequently received from the second buyer.

b. Between June 14, 2000 and August 23, 2002, Plaintiffs incurred $21,912.00 in additional interest payments on the mortgage covering the Property, interest payments they would not have had to make but for Defendants' breach of the contract.

c. Between June 14, 2000 and August 23, 2002, Plaintiffs had to maintain property insurance on the Property, and paid insurance premiums in the amount of $1,202.00 for said premiums.

d. Plaintiffs were obligated to pay real estate taxes on the Property between June 14, 2000 and August 23, 2002. Total real estate taxes paid in that time period equaled $8,560.00.

21. Plaintiffs were in the process of building a new home at the time Defendants breached the contract to purchase the Property. Because Plaintiffs did not sell the Property to the Defendants, Plaintiffs had to also incur costs involved in financing a second home at a time they were not living in it. Between June 26, 2000 and August 23, 2002, Plaintiffs were paying $2,000.00 per month to finance the new home. Plaintiffs also incurred over $3,500.00 in property taxes on the new home, and over $1,000.00 in insurance coverage on the new home, all at a time when they could not reside in the home because of Defendants' breach of contract.

22. As a result of Defendants' breach of the contract with the Plaintiffs, Plaintiffs have been damaged in the total approximate amount of $98,889.00.

WHEREFORE, Plaintiffs pray for judgment against the Defendants for Defendants' breach of contract in the amount of $98,889.00.

DATED this ____ day of August, 2004.

        **TIMOTHY WURTH and SUSAN WURTH, Plaintiffs**

        _____
        PANSING HOGAN ERNST & BACHMAN, LLP
        10250 Regency Circle, Suite 300
        Omaha, Nebraska 68114
        (402) 397-5500
        By: Earl G. Greene, III, #17054
           Attorneys for Plaintiffs

10221.020/201031